**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM OCAMPO,**

                     **Petitioner,**             **1:04-CV-0729**
 **v.**                                               **(NAM)**
                                            **Related Criminal Action**
**UNITED STATES OF AMERICA,**         **1:01-CR-361**

                      **Respondent.**
_____

**APPEARANCES**                           **OF COUNSEL:**

**FOR THE PETITIONER:**

**WILLIAM OCAMPO**
Petitioner, *pro se*
36192-053
Allenwood Low
P.O. Box 1000
White Deer, PA 17887

**FOR THE RESPONDENT:**

**OFFICE OF THE UNITED**           **TINA E. SCIOCCHETTI, Esq.**
**STATES ATTORNEY**                 Assistant U.S. Attorney
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207-2924

**NORMAN A. MORDUE**
**Chief, United States District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.    BACKGROUND[1]**

       Petitioner, *pro se* William Ocampo is a citizen of Colombia. *See* Plea Agreement of

---

[1]     The background information contained in this Memorandum-Decision and Order is derived from the documents filed in the present civil action, *Ocampo v. United States*, 1:04-CV-0729 ("04-CV-0729"), as well as the related criminal matter, *United States v. Ocampo*, 1:01-CR-0361 (N.D.N.Y.) ("01-CR-0361").

William Ocampo (11/8/01) (01-CR-0361, Dkt. No. 9) ("Plea Agreement") at ¶ 5.  On February 10, 1992, Ocampo was deported from the United States after being released from prison following his conviction in the Eastern District of New York of the aggravated felony of possessing with intent to distribute cocaine.  *Id.*  In or about October, 1997, Ocampo re-entered the United States without having first obtained the express permission of the United States Attorney General to re-enter this country.  *Id.*

On June 1, 1998, Ocampo was arrested in Suffolk County, New York and charged with criminal possession of a controlled substance in the third degree and second degree conspiracy.  *See* 04-CV-0729, Dkt. No. 5 at Attachment 4, ¶ 31.  Ocampo subsequently pleaded guilty to attempted second degree conspiracy and was thereafter sentenced to an indeterminate term of imprisonment of four to eight years.  *Id.*, ¶ 30.  While serving that sentence at the Ulster correctional facility, Ocampo was interviewed by an immigration officer who eventually discovered that Ocampo had illegally re-entered the United States after having been previously deported.  Plea Agreement at ¶ 5.

As a result of the foregoing, a federal grand jury sitting in the Northern District of New York returned an indictment against Ocampo charging him with illegally re-entering the United States after deportation, in violation of 8 U.S.C. § 1326.[2]  *See* 04-CV-0729, Dkt. No. 5 at Attachment 1 ("Indictment").  After a finding by the Court that Ocampo was indigent, the Federal Public Defenders Office for the Northern District of New York was appointed to defend Ocampo

---

[2] This statute provides, in part, that any alien convicted of an aggravated felony who has been deported and thereafter enters the United States without the express consent of the Attorney General "shall be fined under [Title 18],  ... imprisoned not more than 20 years, or both  ...."  *See* 8 U.S.C. § 1326(b).

2

concerning the criminal charge brought against him. 01-CR-0361, Dkt. No. 5. On November 8, 2001, following negotiations between Ocampo's attorney and the Office of the United States Attorney for the Northern District of New York ("United States Attorney"), Ocampo entered into a plea agreement whereby he agreed to plead guilty to the charge in the Indictment. 01-CR-0361, Dkt. No. 9. Ocampo thereafter appeared before this Court for purposes of entering his guilty plea. At that hearing, the Assistant United States Attorney prosecuting the case on behalf of the Government discussed, in the presence of Ocampo, the factual basis for the plea, and noted that, for purposes of determining his sentencing exposure, Ocampo's criminal history category was III and his total offense level was 24. *See* Transcript of Change of Plea (11/8/01) (04-CV-0729, Dkt. No. 5 at Attachment 3) ("Plea Tr.") at pp. 12-13. Additionally, both this Court and the Government noted at that proceeding that in his plea agreement, Ocampo agreed to waive his right to appeal any sentence imposed on him as a result of his conviction in the event he was sentenced to a term of imprisonment of seventy eight months or less.[3]  Plea Tr. at pp. 15, 19.

On March 7, 2002, Ocampo appeared before this Court for sentencing. At that proceeding, after hearing arguments from defense counsel and the Government relating to the sentence the parties believed should be imposed on Ocampo, this Court determined that petitioner's total offense level of twenty one, combined with his criminal history category of IV, subjected Ocampo to a range of imprisonment under the Sentencing Guidelines of between fifty

---

[3]  In the Plea Agreement, the parties stipulated to the fact that Ocampo's base offense level for his crime was 8, but that his total offense level was to be increased to 24 due to a 16 point enhancement to his offense level in light of the fact that petitioner had previously been convicted of a drug trafficking offense for which the sentence imposed exceeded thirteen months.. *See* Plea Agreement at ¶ 8(b); Plea Tr. at p. 14; *see also* United States Sentencing Guidelines ("Sentencing Guidelines") § 2L1.2(b).

seven to seventy one months.  *See* Transcript of Sentencing of William Ocampo (3/7/03) (01-CR-0361, Dkt. No. 22) ("Sentencing Tr.") at pp. 11-12.  This Court thereafter sentenced Ocampo to a term of fifty seven months imprisonment, following which Ocampo would be placed on supervised release for three years.  Sentencing Tr. at p. 12.

Ocampo filed the present Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 on June 18, 2004.[4]  *See* 04-CV-0729, Dkt. No. 1 ("Motion to Vacate") at p. 7.  In his application, Ocampo alleges that his trial counsel rendered ineffective assistance by:  i) failing to file and pursue an appeal on behalf of Ocampo; and ii) allowing the Court to increase Ocampo's total offense level for his crime from eight to twenty four, which subjected petitioner to a longer range of imprisonment under the Sentencing Guidelines.  *See* Motion to Vacate at pp. 5-6.[5]  On August 6, 2004, the Government filed its memorandum in opposition to petitioner's Motion to Vacate.  *See* 04-CV-0729, Dkt. No. 5 ("Resp. Mem.").  In its response, the United States Attorney argues, *inter alia*, that:  i) the present Motion to Vacate is untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"); ii) Ocampo is precluded from obtaining the relief he seeks due to his appellate waiver; and iii) the petition is without

---

[4] This is the date on which petitioner apparently signed his petition.  The Second Circuit has held that, due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he hands the papers to the prison authorities for transmittal to the court.  *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir.), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994); *Izzo v. United States*, No. 00 CV 4087, 2006 WL 1026718, at *3 n.3 (E.D.N.Y. Apr 14, 2006) (applying prison mailbox rule to motion to vacate filed by inmate pursuant to § 2255).

[5] The first three grounds asserted in Ocampo's Motion to Vacate all relate to trial counsel's failure to file and/or pursue Ocampo's appeal, while petitioner's fourth ground is rooted in trial counsel's failure to challenge the manner in which Ocampo's total offense level was calculated for purposes of sentencing.  *See* Motion to Vacate.

4

merit. *See* Resp. Mem. at pp. 6-17. Petitioner thereafter filed a reply memorandum of law herein. *See* 04-CV-0729, Dkt. No. 6 ("Reply").[6]

## II. DISCUSSION

In light of the AEDPA, 28 U.S.C. § 2255 now provides that motions to vacate brought under that section are subject to a one year statute of limitations. *See* § 2255, ¶ 6. Under 28 U.S.C. § 2255, the AEDPA's limitation period begins to run from, *inter alia*, "the date on which the judgment of conviction becomes final." § 2255, ¶ 6(1).

In the underlying criminal action, the judgment of conviction was entered against Ocampo on March 19, 2002. *See* 01-CR-0361, Dkt. No. 17. Pursuant to FED.R.APP.P. 4(B), petitioner was required to file his notice of appeal within ten days of the entry of that judgment. *See id.*; *see also United States v. Alcantara*, 396 F.3d 189, 193 (2d Cir. 2005). Since petitioner did not file any appeal relating to his conviction or sentence, his conviction became "final" the day after his time to file an appeal expired, i.e., April 3, 2002.[7] *See Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005); *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000). As noted above,

---

[6] The Court notes that although Ocampo claimed in his Motion to Vacate that he intended to file a memorandum of law in support of his petition, *see* Motion to Vacate, Ground Four (advising court that a "memorandum of law will be sent separately to the clerk of the court"), Ocampo never filed a supporting memorandum in this civil action. Thus, the only memorandum of law before the Court filed by Ocampo is the reply he filed in August, 2004.

[7] The Court notes that Rule 6(a) of the Federal Rules of Civil Procedure provides, in pertinent part, "[i]n computing any period of time prescribed or allowed by these rules ... [w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation;" *see also* Rule 12 of the Rules Governing Section 2255 Proceedings in the United States District Courts ("the Federal Rules of Civil Procedure ... to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules").

petitioner's Motion to Vacate was filed no earlier than June 18, 2004.  *See* Motion to Vacate at p. 7.  Thus, at first blush it appears as though Ocampo's Motion to Vacate, which was filed more than two years after his judgment of conviction became final, is patently untimely.  *See*, *e.g.*, Resp. Mem. at p. 7.

However, Ocampo argues in his Motion to Vacate that his trial attorney wrongfully failed to file a notice of appeal on petitioner's behalf.  *See*, *e.g.*, Motion to Vacate, Grounds One through Three.  Since the limitations period applicable to the present action began to run once Ocampo's time to file an appeal had expired, if Ocampo can demonstrate that his attorney wrongfully failed to file an appeal despite Ocampo's explicit instructions to file such an appeal, petitioner could argue that the limitations period applicable to the present action should be equitably tolled.  *E.g.*, *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003) ("an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling to the one-year limitations period of AEDPA"); *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001) (holding that equitable tolling is available for petitions filed pursuant to 28 U.S.C. § 2255).

In *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006), the Second Circuit specifically addressed the issue of whether an attorney may be found to have rendered ineffective assistance by failing to file a notice of appeal despite the fact that the defendant expressly waived his right to pursue an appeal through a plea agreement.  Specifically, in *Campusano*, the petitioner had executed a plea agreement which contained a promise not to appeal or otherwise challenge his sentence under 28 U.S.C. § 2255 "provided the sentence fell within a stipulated range of 108 to 135 months." *Campusano*, 442 F.3d at 772.  The district court

6

imposed a sentence of 108 months on Campusano, and no direct appeal of his conviction or sentence was filed. *Id.* Campusano subsequently filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel. *Id.* In that pleading, Campusano claimed, *inter alia*, that he had timely requested that his counsel file a notice of appeal but that his counsel wrongfully failed to comply with that directive. *Id.*[8]

The district court denied Campusano's motion to vacate in its entirety. *Campusano*, 2004 WL 1824112, at *6. In reversing and remanding that case to the district court for an evidentiary hearing, the Second Circuit noted that although waivers of appeal are generally enforceable, "important constitutional rights require some exceptions to the presumptive enforceability of a waiver." *Campusano*, 442 F.3d at 774 (citation omitted). Because the Second Circuit "take[s] very seriously the need to make sure that defendants are not unfairly deprived of the opportunity to appeal, even after a waiver appears to bar appeal," *Campusano*, 442 F.3d at 775 (citation omitted), the *Campusano* court determined that when a district court is confronted with a claim by a habeas petitioner that his trial attorney wrongfully failed to file a notice of appeal despite the petitioner's explicit instructions to pursue that course of conduct, "the district court is ... to conduct an evidentiary hearing to determine whether [petitioner] in fact instructed his attorney to file an appeal. If [petitioner] did give such an instruction, he is to be allowed a direct appeal."

---

[8] The district court in *Campusano* summarized petitioner's ineffective assistance claims as ones which alleged that trial counsel improperly failed to:
(1) adequately argue that the firearm found in petitioner's apartment was not possessed in connection with his drug offense; (2) move for a downward departure; and (3) file a notice of appeal despite petitioner's request that he do so.
*See Campusano v. United States*, No. 03 CIV. 2982, 2004 WL 1824112, at *1 (S.D.N.Y. Aug. 13, 2004).

*Campusano*, 442 F.3d at 777.

Turning to the facts of the case *sub judice*, Ocampo plainly alleges that his attorney failed to comply with Ocampo's directive to file a notice of appeal. *See* Motion to Vacate at Grounds One, Two and Three; *see also* Reply at p. 2 ("Petitioner spent much effort attempting to get [defense counsel] to file not only a notice of appeal, but an appeal as well").[9] Therefore, this Court must conduct an evidentiary hearing to determine whether Ocampo in fact instructed his attorney to file such an appeal.[10]  *Campusano*, 442 F.3d at 777.

Rule 8(c) of the Rules Governing Section 2255 proceedings for the United States District Courts provides, in part, that counsel must be appointed for a movant who qualifies for appointment of counsel under 18 U.S.C. § 3006A(g) whenever the Court determines that an evidentiary hearing is required to resolve one or more issues raised in the § 2255 application. *See* Rule 8(c) of the Rules Governing Section 2255 proceedings for the United States District Courts; *see also Perez v. United States*, No. 04 CIV.7148, 2004 WL 2896492, at *1 (S.D.N.Y. Dec. 10, 2004); *Bautista v. United States*, No. 02 CIV. 3358, 2003 WL 131699, at *1 (S.D.N.Y. Jan. 14, 2003).

---

[9] Petitioner has also provided the Court with a copy of a letter he apparently sent to the New York State Bar Association in May, 2004 in which Ocampo complained to that agency of defense counsel's failure to pursue an appeal in the criminal case below. *See* Reply at Exh. A.

[10] The Government argues that even if the Court were to look beyond Ocampo's appellate waiver and consider the substance of his petition, his habeas claims fail on the merits. Resp. Mem. at pp. 12-15. However, the Second Circuit has declared that district courts are "to hold a[n evidentiary] hearing without assessing the merits of the requested appeal." *Campusano*, 442 F.3d at 776. That court further opined that the "simple fact-finding ... require[d by the Second Circuit] will [not] be any more complicated than examining the merits of an appeal that has not been filed." *Campusano*, 442 F.3d at 776.

Although Ocampo never filed an in forma pauperis application in this action, the Court notes that in the underlying criminal proceeding, Ocampo filed a form CJA 23 financial affidavit in conjunction with the related criminal matter.[11]  *See* 01-CR-0361, Dkt. No. 4.  Magistrate Judge David R. Homer, after reviewing that affidavit, determined that Ocampo qualified for court-appointed counsel.  Since Ocampo has been continuously incarcerated since that date, it appears as though petitioner's financial situation would not have significantly changed since Magistrate Judge Homer determined that Ocampo was indigent and eligible for court appointed counsel.  *E.g.*, *Soto v. Walker*, No. 90-CV-197, 2005 WL 2260340, at *4 (N.D.N.Y. Sept. 15, 2005) (McAvoy, S.J.).  Therefore, pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255 and 18 U.S.C. § 3006A(a)(2), this Court conditionally appoints William R. Bartholomae, Esq. to represent petitioner for purposes of the limited evidentiary hearing referenced herein.  However, in order to ensure that Ocampo has remained indigent during the course of this proceeding and is therefore eligible for such appointed counsel, this Court directs petitioner to complete, sign and return to this Court the attached in forma pauperis application which this Court will review in ascertaining whether Ocampo is financially eligible for assigned counsel.

**WHEREFORE**, it is hereby

**ORDERED**, that the above-described hearing be held beginning at 10:00 a.m. on Friday, July 28, 2006 on the 12th Floor of the James M. Hanley Federal Building, 100 S. Clinton St.,

---

[11] A CJA 23 is a form affidavit utilized by parties who seek, *inter alia*, court appointed counsel.  That form requires the applicant to provide "comprehensive financial data including information concerning employment income, assets and obligations."  *United States v. Hilsen*, No. 03 CR.919, 2004 WL 2284388, at *1 n.2 (S.D.N.Y. Oct. 12, 2004).

Syracuse, New York 13261-7367, and it is further

**ORDERED**, that William R. Bartholomae, Esq., Marris, of the Bartholomae Law Firm, 317 Montgomery Street, Syracuse, NY 13202, is hereby assigned as counsel for Ocampo in conjunction with the limited evidentiary hearing referenced above pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255 and 18 U.S.C. § 3006A(a)(2) unless and until this Court finds that petitioner is financially ineligible for such appointment, and it is further

**ORDERED**, that Ocampo fully complete and sign the attached in forma pauperis application, have same certified by an appropriate individual at petitioner's current facility, and promptly file such completed document with this Court and provide the respondent and William R. Bartholomae, Esq. with a copy of that application, and it is further

**ORDERED**, that the Clerk and/or the United States Attorney for the Northern District of New York shall, upon request, provide William R. Bartholomae, Esq. with a copy of the documents filed in this action by the parties, without charge, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties and upon William R. Bartholomae, Esq., by regular or electronic mail.
Dated: June 16, 2006
    Syracuse, NY

Norman A. Mordue
Chief United States District Court Judge

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

**William Ocampo**,
        Petitioner

**APPLICATION TO PROCEED
IN FORMA PAUPERIS**

**United States**,
        Respondent.

**CASE NUMBER: 1:04-CV-0729**

I, William Ocampo., declare that I am the petitioner in the above-entitled proceeding; and that in support of my request to continue proceeding in this action under 28 U.S.C. § 1915, I answer the following questions under penalty of perjury:

1. Are you employed at your prison?  ☐ Yes  ☐ No

    Do you receive any payment from same?  ☐ Yes:  ☐ No

**Notice to Inmates:   The Certificate portion of this affidavit must be completed.**

2. State the date of your last employment, the amount of your take home salary or wages at that time and the name and address of your last employer.

3. In the past twelve months have you received any money from any of the following sources?

    a. Business, profession or other self employment  ☐ Yes  ☐ No

    b. Rent payments, interest or dividends  ☐ Yes  ☐ No

    c. Pensions, annuities or life insurance payments  ☐ Yes  ☐ No

    d. Disability or workers compensation payments  ☐ Yes  ☐ No

    e. Gifts or inheritances  ☐ Yes  ☐ No

    f. Any other sources  ☐ Yes  ☐ No

    If the answer to any of the above is "Yes" describe each source of money and state the amount received **and** what you expect you will continue to receive.

4. Do you have any cash, checking or savings accounts?  ☐ Yes  ☐ No
    If "Yes" state the total amount.  $_____

5. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or **any other assets**?  ☐ Yes  ☐ No

    If "Yes" describe the property and state its value (attach additional sheets if needed):

6. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support:

**I declare under penalty of perjury that the above information is true and correct.**

June            , 2006

_____
William Ocampo

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## CERTIFICATE
(incarcerated applicants only)
(To be completed by appropriate official at the institution of incarceration)

I certify that the applicant named herein has the sum of $_____ on account to his/her credit at (name of institution) _____. I further certify that the applicant has the following securities to his/her credit: _____.

I further certify that **during the past <u>six</u> months**, the applicant's average balance was $_____.

_____          _____
DATE                                    SIGNATURE OF AUTHORIZED OFFICER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -